**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 5786967)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (CA SBN 289730 *pro hac vice* forthcoming)
bsodaify@clarksonlawfirm.com
Christina N. Mirzaie (CA SBN 333274 *pro hac vice* forthcoming)
cmirzaie@clarksonlawfirm.com
555 Madison Ave., 5th Fl
New York, NY 10022
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

|  |  |  |
|---|---|---|
| CYNTHIA SIMEONE, TAKISHA JONES, and PHYLLIS CHARNEY, individually and on behalf of all others similarly situated, | : : : : | **CASE NO.** |
| Plaintiffs, | : : | |
| v. | : : : | **CLASS ACTION COMPLAINT** |
| T. MARZETTI COMPANY, | : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : X | |

-------------------------------------------------------

       Plaintiffs Cynthia Simeone, Takisha Jones, and Phyllis Charney (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to each Plaintiff, which are based on personal knowledge, against T. Marzetti Company (hereinafter "Defendant" or "Marzetti"):

//

//

//

1

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all purchasers of New York Bakery's Texas Toast products including, Ultimate Garlic, Real Garlic, Five Cheese, and Real Parmesan (the "Products"), sold at retail outlets and grocery stores throughout the State of New York. Plaintiffs seek damages, restitution, and injunctive relief on behalf of a New York class of consumers who within the last three years purchased the Products which were falsely labeled and advertised as having "No Preservatives" despite containing the preservative citric acid.

2.      Marzetti is a billion-dollar company[1] whose unlawful and unfair business practice of falsely labeling and advertising its Products as "No Preservatives" deceives consumers and stifles competition. True and correct images of the Product packaging and advertising are depicted *infra* as Figures 1-5.

*Figure 1.*



_____
[1] *See* Lancaster Colony Corporation 2020 Annual Report, http://www.lancastercolony.com/investors/sec-filings-and-annual-reports/annual-reports/default.aspx (last visited November 3, 2021).

## Ingredients

Bread,: Enriched Wheat Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Wheat Gluten, Contains 2% or Less of: Dehydrated Garlic, Salt, Yeast, Natural Flavors (Contains Milk), Soybean Oil, Sugar, Spice, Ascorbic Acid (Dough Conditioner), Cornmeal.

Spread,: Soybean Oil, Water, Garlic, Salt, Dehydrated Garlic, Garlic Juice, Hydrogenated Cottonseed Oil, Sugar, Natural Flavor, Mono and Diglycerides, Citric Acid, Spice, Yeast Extract, Whey (a Milk Ingredient), Beta Carotene Added for Color.

*__Figure 2.__*



# Ingredients

**CONTAINS WHEAT, MILK.**

BREAD: ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, REDUCED IRON, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, CONTAINS 2% OR LESS OF: SALT, YEAST, SOYBEAN OIL, DEXTROSE, ASCORBIC ACID ( VITAMIN C), CORNMEAL. SPREAD: SOYBEAN OIL, WATER, PALM AND/OR HYDROGENATED COTTONSEED OIL, SALT, GARLIC*, MONO AND DIGLYCERIDES, NATURAL FLAVOR, PARSLEY* CITRIC ACID, YEAST EXTRACT, WHEY (A MILK INGREDIENT), BETA CAROTENE ADDED FOR COLOR.
*DRIED

*Figure 3.*



## Ingredients

**CONTAINS MILK, WHEAT.**

BREAD: ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, REDUCED IRON, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, CONTAINS 2% OR LESS OF: SALT, YEAST, SOYBEAN OIL, DEXTROSE, ASCORBIC ACID (VITAMIN C), CORNMEAL. SPREAD: SOYBEAN OIL, WATER, SALT, PALM AND/OR HYDROGENATED COTTONSEED OIL, CONTAINS 2% OR LESS OF: GARLIC*, PARMESAN CHEESE (MILK, CHEESE CULTURES, SALT, ENZYMES), MONO AND DIGLYCERIDES, NATURAL FLAVOR, PARSLEY*, CITRIC ACID, YEAST EXTRACT, WHEY, AUTOLYZED YEAST EXTRACT, LACTIC ACID, XANTHAN GUM, BETA CAROTENE ADDED FOR COLOR. CHEESE: ASIAGO, MOZZARELLA, CHEDDAR, PARMESAN, AND PROVOLONE CHEESES (MILK AND/OR SKIM MILK, CHEESE CULTURES, SALT, ENZYMES, ANNATTO COLOR). *DRIED

*Figure 4.*



*Figure 5.*







3.    The average consumer spends only 13 seconds to make an in-store purchasing decision.[2] That decision is heavily based upon the product's front labeling. Based on its front label, reasonable consumers believe that the Products are free of preservatives, and would not know that the Products actually contain a preservative.

4.    Consumers are deceived by Defendant's labeling and advertising of the Products as containing "No Preservatives," believing that they are purchasing a preservative-free product.

5.    Marzetti's profits are attributable, in part, to deceptive labeling and advertising of the Products as containing "No Preservatives." In reality, the Products contain the well-documented preservative, citric acid.

---

[2] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

6.     Consumers rely on Defendant's labeling and advertising of the Products as containing "No Preservatives" to be truthful and would not know that the Products actually contain a preservative.

7.     Reasonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of "No Preservatives."

8.     Defendant knows that consumers are willing to pay more for foods that are labeled as containing "No Preservatives" because they perceive it to be a healthier alternative to similar products without the "No Preservatives" label, and advertises the Products with the intention that consumers rely on the representation made on the front of the Products' packaging that the Products have "No Preservatives."

9.     By falsely labeling the Products as having "No Preservatives," Defendant has profited from consumers' preference for food products that are perceived to be healthier or made free of preservatives.

**PARTIES**

10.     Plaintiff Cynthia Simeone ("Plaintiff Simeone") is, and at all times relevant hereto was, a citizen of New York. Plaintiff Simeone purchased Defendant's Five Cheese Texas Toast and Ultimate Garlic Texas Toast at a Stop & Shop store in Hyde Park, New York in November 2020. In making her purchase, Plaintiff Simeone relied upon the claims made on the front label of the Products, including the "No Preservatives" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Simeone had known that the Products actually contained preservatives, she would not have purchased the Products, or

would have paid significantly less for the Products. Plaintiff Simeone intends and desires to purchase the Products again in the future as labeled (i.e., "No Preservatives"), but will not have the specialized knowledge necessary to know whether the Products are truthfully labeled.

11.     Plaintiff Takisha Jones ("Plaintiff Jones") is, and at all times relevant hereto was, a citizen of New York. Plaintiff Jones purchased Defendant's Texas Toast with Real Garlic at a Target store in Yonkers, New York in August 2021. In making her purchase, Plaintiff Jones relied upon the claims made on the front label of the Product, including the "No Preservatives" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Jones had known that the Products actually contained preservatives, she would not have purchased the Product, or would have paid significantly less for the Product. Plaintiff Jones intends and desires to purchase the Products again in the future as labeled (i.e., "No Preservatives"), but will not have the specialized knowledge necessary to know whether the Products are truthfully labeled.

12.     Plaintiff Phyllis Charney ("Plaintiff Charney") is, and at all times relevant hereto was, a citizen of New York. Plaintiff Charney purchased Defendant's Parmesan Texas Toast, Texas Toast with Real Garlic, and the Ultimate Garlic Texas Toast at a Gristedes store, Ideal Market store, and/or Key Food store in New York, New York before and during 2019-2020. In making her purchase, Plaintiff Charney relied upon the claims made on the front label of the Products, including the "No Preservatives" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Charney had known that the Products actually contained preservatives, she would not have purchased the Products, or would have

paid significantly less for the Products. Plaintiff Charney intends and desires to purchase the Products again in the future as labeled (i.e., "No Preservatives"), but will not have the specialized knowledge necessary to know whether the Products are truthfully labeled.

13.     T. Marzetti Company is a corporation headquartered in Westerville, Ohio and maintains its principal business office at 380 Polaris Parkway, Suite 400, Westerville, OH 43082. Marzetti directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New York.  Marzetti is one of the owners, manufacturers, and distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive packaging for the Products.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of the State of New York, Defendant T. Marzetti Company is a citizen of the State of Ohio; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

15.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

16.     Venue is proper in this Court because Plaintiffs and many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

//

//

10

**FACTUAL ALLEGATIONS**

**The Products Contain the Preservative Citric Acid**

17.     Defendant advertises and displays on the front of the Product that it contains "No Preservatives," thereby misleading reasonable consumers to believe that the Products are free of preservatives. However, the Products contain a well-documented preservative, citric acid.

18.     The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

19.     The FDA classifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in frozen foods. [3] Specifically, the FDA elaborates under its "What They Do" section, that preservatives, among other things, help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness." *Id.*

20.     In the same section, immediately *infra,* the FDA also provides "[e]xamples of uses" for preservatives, like citric acid, such as in "oils and margarines." *Id.* The citric acid in the Products is contained in the margarine type spread found on the frozen bread.

21.     Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut"

_____

[3] *See* FDA website, https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm (last visited November 3, 2021).

and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[4]

22.     Citric acid's ability to chelate, or form compounds containing a ligand bonded to a central metal atom at two or more points, with other chemical compounds allows citric acid to stabilize active ingredients.[5]  Citric acid stabilizes the active ingredients[6] in the Products and thus is a preservative in the Products.

23.     In addition, citric acid has been found to have antimicrobial properties against some bacteria and mold.[7]

24.     Citric acid is a preservative in the Products regardless of the subjective purpose or intent for why Defendant added citric acid to the Products, including, as a flavoring agent. As the FDA states, a preservative like citric acid "when added to food, *tends to prevent or retard deterioration thereof* […]." (Emphasis added).

//

//

//

//

---

[4]  *See* FDA label compliance website,
https://www.fdalabelcompliance.com/letters/ucm228663 (last visited November 3, 2021).
[5] National Center for Biotechnology Information. PubChem Database. Citric acid, CID=311,
https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (last visited November 3, 2021).
[6] *Citric Acid,* https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (last visited on November 3, 2021).
[7] Branon, et al. 2002 *Food Additives*, 2nd edition, pages 591. Marcel Dekker, NY NY.

25.     Even if citric acid can be used as a flavoring agent in the Products, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Products because citric acid acts as a preservative *even if* very low levels are contained in the Products.[8]

26.     The quantity of citric acid therefore needed to affect the flavor of the Products is more than sufficient to function as a preservative.

27.     Citric acid in frozen foods, like in the Products, functions as a preservative through its chelating and acidic properties that enhance the action of antioxidants and inactivate naturally present enzymes which could cause undesirable browning and loss of flavor.[9]  Citric acid serves these functions regardless of whether it is also being used as a flavorant.[10]

28.     Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life. To help ensure this, manufacturers impose many hurdles to degradation when formulating a product. Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Products for other reasons.[11]

---

[8] *See* Doores, S., 1993. Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods.* Marcel Dekker, Inc., New York, pp. 95-136.
http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last visited November 3, 2021).
[9] *Kirk-Othmer Food and Feed Technology*, Volume 1, p. 262 (John Wiley and Sons, 2007); Barrett, et al. *"Direct Food Additives in Fruit Processing,"* in *Processing Fruits: Science and Technology*, Second Edition, Diane M. Barrett, Laszlo Somogyi, and Hosahalli S. Ramaswamy, eds., p. 302 (CRC Press, 2004); Abhd-Elhady, "Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry," *Annals of Agricultural Sciences*, 59:69-75 (2014).
[10] *See* Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.
[11] *See* Biesta-Peters, E., et al. Comparing Nonsynergistic Gamma Models with Interaction Models To Predict Growth Of Emetic Bacillus Cereus When Using Combinations Of Ph And

13

29.     Citric acid, is not only a preservative, but also imparts artificial flavor. While citric acid is naturally found in fruits and vegetables, the citric acid found in processed foods, like the Products, is artificial or manufactured citric acid ("MCA") that has gone through extensive chemical processing.[12]

30.     MCA is created through *Aspergillus niger* fermentation. *Aspergillus niger* is a common black mold that grows on decomposing starchy fruits and vegetables. It is chemically processed by being fed sugars, such as glucose and sucrose, which then creates a citric acid solution, that is then filtered and processed for use in final form. As it grows, *Aspergillus niger* excretes large amounts of citric acid,[13] thereby making it an industry favorite among food and beverage manufacturers.  In fact, *Aspergillus niger* remains the world's primary method for creating MCA.[14]

31.     MCA—through the *Aspergillus niger* process—is used extensively in the food, beverage, chemical, and pharmaceutical industries[15] due to its ease of handling, ability to ferment a variety of cheap, raw materials, and high citric acid yield.[16]

//

//

---

Individual Undissociated Acids As Growth-Limiting Factors. *Applied and Environmental Microbiology,* American Society for Microbiology, (2010).

[12] Iliana E. Sweis and Bryan C. Cressey, Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports National Center for Biotechnology Information, U.S. National Library of Medicine National Institutes of Health (August 9, 2018).

[13] Maria Papagianni, Advances in citric acid fermentation by Aspergillus niger: Biochemical aspects, membrane transport and modeling, Biotechnology Advances, 25:244-263 (2007).

[14] Tushar Patel and Hiral Pandya, Citric Acid Production Fermentation Process, International Journal of Advance Research and Innovative Ideas in Education 3 (2017): 3983-3991.

[15] Jianlong Wang, Enhancement of citric acid production by Aspergillus niger using n-dodecane as an oxygen-vector, Process Biochemistry, 35 (10), 1079-1083. (2000).

[16] Citric Acid Production, *supra.*

**Consumers Seek Preservative-Free Foods**

32.     By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health…84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[17]

33.     One study found that when consumers were asked to choose a product that was the closest to their understanding of what "natural" is based on product labels, consumers chose "No Preservatives" amongst other labels.[18]

34.     Consumers are also willing to pay more for the products with "No Preservatives" labels because of the perceived higher quality, health and safety benefits associated with such foods. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods.[19] This,

---

[17] *See, Free-From Food Trends - US - May 2015,* Mintel: World's Leading Market Intelligence Agency, http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited November 3, 2021).

[18] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[19] *See, We Are What We Eat: Healthy Eating Trends Around the World,* Nielson (Jan. 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Nielsen20Global20Health20and20Wellness20Report20-20January202015-1.pdf (last visited on November 3, 2021).

coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor, means consumers are eager and willing to pay more for food advertised and labeled as having "No Preservatives" like the Products.[20]

35.    Defendant's practice of capitalizing on consumers' preferences for healthier products is false and deceptive. This deception continues today, as consumers continue to purchase the Products under the mistaken belief that it is preservative-free based on Defendant's false, deceptive, and misleading labeling and advertising of the Products as having "No Preservatives."

36.    Plaintiffs and other consumers of the Products made their purchase decisions in reliance upon Defendant's advertised claims that that Products contain "No Preservatives."

37.    Plaintiff Simeone purchased the New York Bakery Five Cheese Texas Toast and Ultimate Garlic Texas Toast from a Stop & Shop store located in Hyde Park, New York in November 2020.  Plaintiff Simeone paid approximately $3.99 for each of the Products. The Products were labeled as having no "No Preservatives" on the front of the Products' packaging.

38.    Plaintiff Jones purchased the New York Bakery Texas Toast with Real Garlic and Ultimate Garlic Texas Toast from a Target store located in Yonkers, New York in August 2021. Plaintiff Jones paid approximately $2.59 for the Product. The Product was labeled as having no "No Preservatives" on the front of the Product's packaging.

39.    Plaintiff Charney purchased the New York Bakery Parmesan Texas Toast, Texas Toast with Real Garlic, and the Ultimate Garlic Texas Toast from a Gristedes store, Ideal

---

[20] *See, Health and Wellness the Trillion Dollar Industry in 2017: Key Research Highlights*, Euromonitor International,
https://blog.euromonitor.com/health-and-wellness-the-trillion-dollar-industry-in-2017-key-research-highlights/ (last visited November 3, 2021).

Market store, and/or Key Food stores in New York, New York before and during 2019-2020. Plaintiff Charney paid approximately $2.50-$3.39 for each of the Products. The Products were labeled as having no "No Preservatives" on the front of the Products' packaging.

40.     Plaintiffs and the Class reasonably and detrimentally relied upon the Products' label representations by Defendant that the Products contain "No Preservatives." Plaintiffs and the Class would not have purchased the Products had they known that the Products contain preservatives.

41.     The Products are all manufactured by Defendant.

42.     The Products are all sold at grocery and retail stores throughout New York.

43.     The Products are all manufactured in the same facilities.

44.     The Products all contain similar bread slices (i.e., thick, Texas toast) with flavored spread.

45.     The Products are all packed in opaque, 11.25 oz., rectangular cardboard boxes.

46.     The Products are all labeled and advertised as containing "No Preservatives."

47.     The Products all include the preservative citric acid.

48.     Consumers of the Products have been deceived in the same way.

49.     Consumers of the Products have been injured in the same way.

50.     Consumers of the Products have been damaged in the same way.

51.     Defendant's conduct threatens New York consumers by using intentionally deceptive and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

//

52.     There is no practical reason for false labeling and advertising of the Products, other than to mislead consumers as to the presence of preservatives in the Products while simultaneously providing Defendant with a financial windfall.

53.     Plaintiffs make the allegations herein upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**Similar Frozen Food Products that Do Not Contain Preservatives are Accurately Labeled by Competitors**

54.     Frozen foods products that do not contain preservatives, namely citric acid, are accurately labeled as containing "No Preservatives" in the marketplace. For example, Pepperidge Farm's Texas Toast Made with Real Garlic & Parsley, Texas Toast Made with Real 5 Cheese, and Texas Toast Made with Real Mozzarella and Monterey Jack are accurately labeled as having "No Preservatives," and do not contain citric acid or any other preservative, True and correct representations of the comparator product and its ingredient list are set forth below as Figure 6.

*__Figure 6.__*













## Similar Frozen Food Products that Contain Preservatives are Accurately Labeled by Competitors

55.     Frozen food products that contain preservatives, such as citric acid, do not label their products as having "No Preservatives." For example, Walmart's Great Value Garlic Texas Toast contains the preservative citric acid in its spread and correctly does not include a "No Preservatives" label, unlike Defendant's Products. True and correct representations of the comparator product and its ingredient list are set forth below as Figure 7.

//

//

//

//

//

//

*Figure 7.*



56.     Plaintiffs seek injunctive relief against Defendant for false and misleading advertising in violation of New York General Business Law ("N.Y. GBL") Sections 349 and 350.  Defendant made and continues to make these false and misleading statements in its labeling and advertising of the Product.  Compliance with remedial statutes like those underlying this

lawsuit will benefit Plaintiffs, the putative class, consumers, and the general public. Compliance is the primary litigation objective of this lawsuit.

57.     The false and misleading labeling and advertising of the Products violate the New York General Business Law Sections 349 and 350 and the common law.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23(a) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in New York for personal use and not for resale during the time period November 3, 2018 through the present ("the Class Period"). Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products."

59.     *Numerosity:* The Class is so numerous that their individual joinder herein is impracticable. On information and belief, the Class numbers in the hundreds of thousands or more throughout the State of New York. The Class is sufficiently numerous because hundreds of thousands of units of the Products have been sold in New York during the Class Period.

60.     *Commonality and Predominance:* Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

> a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;
>
> b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with

respect to the advertising, marketing, and sale of its Products;

   c.   Whether Defendant made false and/or misleading statements to Plaintiffs and the Class and the public concerning the contents of its Products;

   d.   Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

   e.   Whether Defendant is liable to Plaintiff and the Class for violations of the New York consumer-protection law;

   f.   Whether Plaintiffs and the Class are entitled to money damages;

   g.   Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief; and,

   h.   Whether Plaintiffs and the Class are entitled to restitution from Defendant;

   i.   Whether Defendant is liable to Plaintiffs and the Class for unjust enrichment; and,

   j.   Whether Defendant is liable to Plaintiffs and the Class for breach of express warranty.

61.    ***Typicality:*** Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class each purchased the Products under the false belief that the Products were free of preservatives. Plaintiffs and the Class relied upon Defendant's packaging and would not have purchased the Products if they had known that the Products contained preservatives.

62.    ***Superiority:*** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would

make it impracticable or impossible for the Class to prosecute their claims individually. The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

63.    ***Adequacy:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

64.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

65.    Absent a class action, Defendant will likely retain the benefits of their wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

//

//

//

//

**FIRST CAUSE OF ACTION**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW  § 349**

**(On Behalf of Plaintiffs and the Class Members)**

66.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.     New York General Business Law Section 349 ("N.Y. GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

68.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of N.Y. GBL § 349, and as such, Plaintiffs and the Class members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

69.     There is no adequate remedy at law.

70.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Products to consumers.

71.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as containing "No Preservatives," when in fact it contains the well-documented preservative, citric acid—is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.     Plaintiffs and the Class members have been injured inasmuch as they paid a premium for Products that—contrary to Defendant's representations—were not preservative-free. Accordingly, Plaintiffs and the Class members received less than what they bargained and/or paid for.

73.     Defendant's advertising and Products' packaging and labeling induced Plaintiffs and the Class members to buy Defendant's Products and to pay a premium price for them.

74.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of N.Y. GBL §349(a) and Plaintiffs and the Class members have been damaged thereby.

75.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**

**(On Behalf of Plaintiffs and the Class Members)**

76.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

77.     N.Y. GBL § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

78.     N.Y. GBL § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any

advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

79.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products contain "No Preservatives," when in reality, it contains the well-documented preservative, citric acid.

80.     Plaintiffs and the Class members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which—contrary to Defendant's representations—were not preservative-free. Accordingly, Plaintiffs and the Class members received less than what they bargained and/or paid for.

81.     Defendant's Products' advertising, packaging, and labeling induced Plaintiffs and the Class members to buy Defendant's Products.

82.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

83.     Defendant's conduct constitutes multiple, separate violations of N.Y. GBL § 350.

84.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

85.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

86.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### COMMON LAW BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiffs and the Class Members)**

87.     Plaintiffs repeat and reallege all the allegations of the previous paragraphs and incorporate the same as if set forth herein at length.

88.     Defendant expressly warranted on each and every Product that it contains "No Preservatives." Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods, the Products, that became part of the basis of the bargain and created an express warranty that the Products would conform to the stated promise. Plaintiffs placed importance on Defendant's claims.

89.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

90.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that conform to the advertisement.

91.     Defendant's express warranty that the Products had "No Preservatives" was breached because the Products contained citric acid, a well-known preservative.

92.     Defendant therefore breached the terms of its express warranty with Plaintiffs and the Class by not providing Products that conform to the advertising claim that the Products have "No Preservatives."

93.     As a result of Defendant's breach of express warranty, Plaintiffs and the Class have been damaged in the amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**COMMON LAW UNJUST ENRICHMENT**

**(On Behalf of Plaintiffs and the Class Members)**

94.     Plaintiffs repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

95.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiffs and members of the Class in a manner that was unfair, unconscionable, and oppressive.

96.     Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

97.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

98.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

99.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

100.     The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendant.

101.     Plaintiffs and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all Causes of Action as follows:

A.          An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

B.          For an order enjoining Defendant from continuing to label and advertise the Products as challenged herein;

C.          For an order declaring the Defendant's conduct violates the statutes referenced herein;

D.          For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

E.          For actual, compensatory, statutory, punitive damages and/or treble damages in amounts to be determined by the Court and/or jury;

F.          For pre- and post-judgment interest on all amounts awarded, as allowable by law,

G.          For an order of restitution and all other forms of equitable monetary relief;

H.       For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.       Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial on all triable issues.

Dated: November 3, 2021             Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

By: * /s/ Ryan J. Clarkson*
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
(*pro hac vice* forthcoming)
Christina N. Mirzaie, Esq.
(*pro hac vice* forthcoming)

*Attorneys for Plaintiffs*