UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CYNTHIA SIMEONE, TAKISHA JONES,
and PHYLLIS CHARNEY, *individually and
on behalf of all others similarly situated*,

                        Plaintiffs,

    v.

T. MARZETTI COMPANY,

                        Defendant.

No. 21-CV-9111 (KMK)

OPINION & ORDER

---

Appearances:

Bahar Sodaify, Esq.
Christina Mirzaie, Esq.
Ryan Clarkson, Esq.
Alan Gudino, Esq.
Clarkson Law Firm, P.C.
Los Angeles, CA
*Counsel for Plaintiffs*

Ronald Y. Rothstein, Esq.
Sean H. Suber, Esq.
Winston & Strawn LLP
Chicago, IL
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    Plaintiffs Cynthia Simeone ("Simeone"), Takisha Jones ("Jones"), and Phyllis Charney ("Charney," and collectively "Plaintiffs") bring this putative class action against T. Marzetti Company ("Defendant"), alleging that the labeling on Defendant's Ultimate Garlic, Real Garlic, Five Cheese, and Real Parmesan Texas Toast products (the "Products") is deceptive and misleading. (*See generally* First Am. Compl. ("FAC") (Dkt. No. 18).) Plaintiffs bring claims for damages against Defendant for violation of §§ 349 and 350 of the New York General Business

Law ("GBL"), N.Y. Gen. Bus. L. §§ 349, 350. (*See id.* ¶¶ 75–102.) Before the Court is Defendant's Motion To Dismiss the FAC (the "Motion"). (*See* Not. of Mot. (Dkt. No. 25).) For the following reasons, the Motion is denied.

## I.  Background

### A. Materials Considered

As a threshold matter, the Court must determine the proper treatment of documents that both parties have requested the Court consider in deciding this Motion, either on the grounds that the documents are integral to the FAC or that the documents are public records which are proper subjects of judicial notice. (*See* Def's Request for Judicial Notice ("Def's RJN") (Dkt. No. 27); Pl's Request for Judicial Notice ("Pl's RJN") (Dkt. No. 34).)

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

A court may consider a document incorporated by reference "where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases).

"Courts may take judicial notice of public documents or documents of public record" in addition to "records of administrative bodies," such as government agencies like the FDA. *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (collecting cases). As such, courts routinely take judicial notice of FDA guidance documents and documents which are publicly available on the FDA's website. *See, e.g., Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59–60 (2d Cir. 2016) (taking judicial notice of FDA guidance document); *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) (taking judicial notice of "public records contained on the FDA website").

Plaintiffs request that the Court take judicial notice of several rulings and orders from *Daniel Prescod v. Celsius Holdings, Inc.*, No. 19-STCV-9231 (Los Angeles Sup. Ct.). (*See* Pl's RJN at 2–3.) The Court will take judicial notice of these documents as courts in the Second Circuit regularly take judicial notice of decisions and orders issued by other courts. *See, e.g., Dixon v. von Blanckensee*, 994 F.3d 95, 103 n.6 (2d Cir. 2021) (taking judicial notice of a state court order); *Coggins v. County of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at *6–7 (E.D.N.Y. June 20, 2008) (taking judicial notice of state court grand jury transcripts).

Defendant requests that the Court take judicial notice of two documents posted on the FDA's public website—(1) an FDA food additive status list and (2) an FDA warning letter—as public records. (*See* Def's RJN Exs. A and B (Dkt. Nos. 28-1, 28-2).) The Court will take

judicial notice of these documents, as courts in the Second Circuit routinely take judicial notice of FDA documents posted on public websites. *See, e.g., Apotex*, 823 F.3d at 59–60 (taking judicial notice of FDA guidance document); *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *2 (S.D.N.Y. Mar. 18, 2022) ("[C]ourts routinely take judicial notice of FDA guidance documents and documents which are publicly available on the FDA's website."); *Simon*, 990 F. Supp. 2d at 401 n.2 (taking judicial notice of "public records contained on the FDA website").[1]

Defendant also requests that the Court take notice of fourteen other exhibits, (*see* Def's RJN Exs. C–P (Dkt. Nos. 28-3–28-16)), that are integral to the FAC because Plaintiffs cite directly to them and either quote from or rely upon their terms and conclusions in framing their allegations, (Def's RJN at 2–3). The Court agrees, as it is evident that Plaintiffs have directly relied on these documents to frame their allegations as to the functions of citric acid and as to consumer sentiment about preservatives in food. *See, e.g., MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 324–25 (N.D.N.Y. 2021) (deeming three scientific studies integral where plaintiff had referenced the studies in allegations in the amended complaint).

---

[1] Plaintiffs argue that the Court should not take judicial notice of these documents because they are "subject to dispute and not capable of immediate and accurate determination." (Pl's Objs. to RJN ("Pl's RJN Obj's") 6 (Dkt. No. 32)). However, Plaintiffs do not appear to actually dispute the source or authenticity of these exhibits, but rather "Defendant['s] . . . interpretation" of them. (*Id.* at 7.) Thus, the Court may still take judicial notice of the exhibits. *Apotex*, 823 F.3d 51, 59–60 (taking judicial notice of FDA guidance document).
  Plaintiffs also object to these exhibits on the grounds that they contain "inadmissible hearsay." (*See* Pl's RJN Obj's 8.) However, by taking judicial notice, the Court is acknowledging only that the statements were made, so the rule against hearsay does not apply. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that when the court takes judicial notice of publicly available government documents it does so only for the fact that the statements were made, not for their truth); *Gordon*, 2022 WL 836773, at *3 (same).

B. Factual Background

The following facts are drawn from the FAC and are assumed true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant is a corporation headquartered in Westerville, OH. (*See* FAC ¶ 16.) Among other foods, Defendant sells the Products, which are a brand of frozen "bread slices . . . [covered] with flavored spread." (*See id.* ¶ 51.) The Products are all packaged in rectangular cardboard boxes that are "labeled and advertised as containing 'No Preservatives.'" (*Id.* at ¶¶ 52–53.) All of the Products include citric acid in the flavored spread covering the bread. (*Id.* ¶¶ 2, 23, 54.) Citric acid is included in the ingredients list displayed on the packaging of the Products. (*Id.* at Figures 1–5.) Plaintiffs allege that FDA regulations classify citric acid as a preservative, (*id.* ¶¶ 21–23), and that the FDA has stated in a published warning letter that where citric acid functions as a preservative it should be labelled as such, (*id.* ¶ 24). Plaintiffs also allege that citric acid may serve as a preservative in frozen foods like the Products, relying on the fact that some competitors to the Products that also include citric acid as an ingredient do not have a "No Preservatives" label. (*Id.* ¶¶ 61–62.) Plaintiffs allege that citric acid is a preservative in the Products because it serves to "stabilize the active ingredients." (*Id.* ¶ 25.)[2]

Plaintiffs allege that the "No Preservatives" label used on the Products is deceptive because

> Defendant knows that consumers are willing to pay more for foods that are labeled as containing "No Preservatives" because they perceive it to be a healthier alternative to similar products without the "No Preservatives" label and advertises

---

[2] Plaintiffs also cite to a number of scientific studies and FDA regulations that Plaintiffs allege support their allegations that citric acid's function as a preservative in the Products. (*Id.* ¶¶ 22–27, 29, 31–37, 39.) As noted in § I.A *supra*, the Court has taken judicial notice of a number of these studies at Defendant's request.

5

> the Products with the intention that consumers rely on the representation [in making their purchases] . . .

(*Id.* ¶ 9.)  Simeone alleges that she purchased the Five Cheese Texas Toast and Ultimate Garlic Texas Toast at a Stop & Shop location in Hyde Park, New York in November 2020 and "relied upon the claims made on the front label of the Product, including the 'No Preservatives' claim" in making her purchase.  (*Id.* ¶ 11.)  Simeone additionally alleges that "[i]f [she] had known that the Products contained preservatives, then [she] would not have purchased the Products or would have paid significantly less for [them]."  (*Id.*)  Jones purchased "Texas Toast with Real Garlic at a Target store in Yonkers, New York in August 2021" (*id.* ¶ 12), and Charney purchased "Parmesan Texas Toast, Texas Toast with Real Garlic, and [] Ultimate Garlic Texas Toast at a Gristedes store, an Ideal Market store, and/or a Key Food store in New York, New York before and during 2019-2020," (*id.* ¶ 13).  Like Simeone, both Jones and Charney allege that they relied on the "No Preservatives" label in making their purchases and would not have purchased the Products in question or would have paid less if they had been aware at the time of purchase that the Products contained preservatives.  (*Id.* ¶¶ 12, 13.)

    C.  Procedural History

Plaintiffs filed their Complaint on November 3, 2021.  (*See* Compl. (Dkt. No. 1).)  On January 10, 2022, Defendant filed a letter-motion requesting to file a motion to dismiss.  (*See* Letter from Ronald Y. Rothstein, Esq. to Court (January 10, 2022) (Dkt. No. 10).)  Plaintiffs responded to Defendant's letter motion on February 8, 2022 and informed the Court that they would be filing an amended complaint to address the deficiencies identified by Defendant.  (*See* Letter from Ryan J. Clarkson, Esq. to Court (February 8, 2022) (Dkt. No. 15).)  Plaintiffs filed their Amended Complaint on February 23, 2022.  (*See* FAC.)  On March 4, 2022, Defendant filed a letter requesting to submit a motion to dismiss, (*see* Letter from Ronald Y. Rothstein, Esq.

6

to Court (March 4, 2022) (Dkt. No. 19)), to which Plaintiffs responded on March 11, 2022, (*see* Letter from Ryan J. Clarkson, Esq. to Court (March 11, 2022) (Dkt. No. 20)).  After a conference held on April 7, 2022 (*see* Dkt. (minute entry for April 7, 2022)), the Court issued an order setting a briefing schedule for Defendant's Motion To Dismiss, (*see* Order (Dkt. No. 23)).

Defendant filed its Motion To Dismiss and accompanying papers on May 9, 2022.  (*See* Not. of Mot.; Def's Mem. of Law in Supp. of Mot. to Dismiss ("Def's Mem.") (Dkt. No. 26); Def's RJN; Decl. of Ronald Y. Rothstein (Dkt. No. 28).)  On June 17, 2022, Plaintiffs filed their Opposition and accompanying papers.  (*See* Pl's Opp'n to Mot. To Dismiss ("Pl's Opp'n") (Dkt. No. 31); Pl's Request to Exclude ("Pl's 12(d) Mem.") (Dkt. No. 33); Decl. of Bahar Sodaify (Dkt. No. 35); Pl's RJN Obj's; Pl's RJN.)  Defendant filed its Reply and accompanying papers on July 8, 2022.  (Def's Reply (Dkt. No. 36); Def's Response to Pl's RJN Obj's ("Def's RJN Reply") (Dkt. No. 37); Def's Response to Pl's 12(d) Mem. ("Def's 12(d) Reply") (Dkt. No. 38).)  On October 13, 2022 and November 1, 2022, Plaintiffs filed Notices of Supplemental Authority in support of their Opposition.  (*See* Not. of Supp'l Authority (Dkt. No. 40); Not. of Supp'l Authority (Dkt. No. 41).)

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

7

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hyper[-]technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted). Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial

8

notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis[3]

Defendant argues that Plaintiffs fail to state a plausible claim under the GBL because they have not adequately alleged that: (1) Defendant engaged in conduct that is materially misleading (*see* Def's Mem. at 15–21); (2) Plaintiffs suffered an injury due to Defendant's use of the words "No Preservatives" on the Products' packaging, (*id.* at 21–25); or (3) Plaintiffs suffered an injury under a "price premium" theory (*id.* at 25–27).  Finally, Defendant argues, in the alternative, that Plaintiffs' GBL claims are preempted by federal law.  (*Id.* at 27–31.)  The Court addresses each argument in turn.

1.  New York General Business Law § 349 and 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of

---

[3] Plaintiffs have requested, pursuant to Fed. R. Civ. P. 12(d), that the Court strike "counter-assertions" from Defendant's Memorandum of Law. (*See* Pl's 12(d) Mem. at 2.) However, as Defendant points out, "[m]otions to strike are governed by Rule 12(f), and that 'rule only applies to pleadings, which do not include motions to dismiss.'" (Def's 12(d) Reply at 3 (quoting *Wright v. Belafonte*, No. 12-CV-7580, 2014 WL 1302632, at *3 (S.D.N.Y. Mar. 31, 2014), *aff'd*, 687 F. App'x 1 (2d Cir. 2017) (summary order)).  The Court agrees with Defendant that Plaintiffs have no basis upon which to request to strike the statements.  Plaintiffs' request is therefore denied.  *See Lubavitch of Old Westbury, Inc. v. Bd. of Trustees of Vill. of Old Westbury, N.Y.*, No. 08-CV-5081, 2021 WL 4756093, at *8 (E.D.N.Y. July 7, 2021), *report and recommendation adopted in part, rejected in part sub nom. Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, N.Y.*, No. 08-CV5081, 2021 WL 4472852 (E.D.N.Y. Sept. 30, 2021) (denying defendant's motion to strike because a "[d]eclaration in reply is not a pleading and . . . therefore is not within the purview of Rule 12(f)."(quotation marks omitted)); *Matthews v. Bell*, No. 18-CV-6460, 2019 WL 1117512, at *2 (W.D.N.Y. Mar. 11, 2019) (denying plaintiff's motion to strike statements from motion to dismiss and accompanying papers, in part, because Rule 12(f) applies only to pleadings).
 During a conference on April 7, 2022, Plaintiffs represented to the Court that they would be withdrawing their claim for injunctive relief, a position that they have affirmed in their Opposition. (*See* Pl's Mem. at 8 n.3.)  As such, the Court will not consider Defendant's arguments related to this request for relief.  (*See* Def's Mem. at 13–14.)

any business, trade[,] or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. L. §§ 349, 350). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in original) (citation omitted)). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

### a. Consumer-Oriented Conduct

Defendant appears to concede—or at least, does not contest for purposes of its Motion—that Defendant's conduct was consumer-orientated. (*See generally* Def's Mem.) "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to the public interest.'" *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). This requirement is liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v.*

10

*Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)). Here, Plaintiffs allege that Defendant is "one of the owners, manufacturers, and distributors" of the Products, which are sold to "purchasers . . . at retail outlets and grocery stores throughout the State of New York." (*See* FAC ¶¶ 1, 16.) These allegations are sufficient to satisfy the first element of Plaintiffs' GBL claim. *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to virtually all economic activity, and their application has been correspondingly broad" (footnote omitted) (collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000) (noting that the "consumer-oriented" requirement may be satisfied "by a showing that the practice has a broader impact on the consumer at large") (citation omitted).

b.  <u>Materially Misleading Conduct</u>

Defendant argues that Plaintiffs cannot state a cognizable claim for violations of GBL §§ 349 and 350 because Plaintiffs have failed to plausibly allege that the "No Preservatives" representation on the Products is misleading. First, Defendant argues that Plaintiffs do not allege facts sufficient to establish that citric acid functions as a preservative in the Products. (*See* Def's Mem. at 15–21.) Second, Defendant argues that Plaintiffs have not adequately alleged reasonable consumers would understand citric acid functions as a preservative in the Products. (*Id*. at 21–25.)

As to Defendant's first claim, the Court notes that in deciding a motion to dismiss, all of Plaintiffs' allegations must be taken as true and all reasonable inferences must be drawn in their favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs have alleged citric acid can act as a preservative when included in food, including frozen food. (*See* FAC ¶¶ 21–31.) Plaintiffs have also specifically alleged that all of the Products include citric acid in the flavored spread covering the bread, (*id.* at ¶¶ 2, 23, 54), and that this citric acid

serves as a preservative because it "stabilize[s] the [Products'] active ingredients," (*id.* at ¶ 25). Taken together, these allegations are sufficient to establish that citric acid functions as a preservative in the Products. *See Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (finding plaintiff sufficiently alleged citric acid was a preservative where plaintiff included "detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages"); *Quiroz v. Beaverton Foods, Inc.*, No. 17-CV-7348, 2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019) (holding plaintiff sufficiently alleged that citric acid functioned as preservative based on expert declaration that explained chemical effects of citric acid in the product at issue); *Hu v. Herr Foods, Inc.*, No. 16-CV-5037, 2017 WL 11551822, at *1 n.4 (E.D. Pa. Sept. 26, 2017) (same). Defendant's citation to *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) is unavailing because the plaintiff there failed to explicitly allege that citric acid acted as a preservative in the product at issue, *id.* at 821–822; Plaintiffs here have explicitly alleged that "[c]itric acid stabilizes the active ingredients in the Products and thus is a preservative. . . ." (FAC ¶ 25.)  Plaintiffs' allegations are sufficient at this stage to state a claim that citric acid works as a preservative in the Products.[4]

---

[4] Defendant makes two other arguments that the Court finds unavailing.  First, Defendant argues that Plaintiffs' claims fail because they are raising an insufficient "omission-based deception claim."  (Def's Mem. at 19–20.)  However, Defendant's point is not well-taken because Plaintiffs are plainly alleging that Defendant engaged in an affirmative misrepresentation by advertising the Products as containing "No Preservatives" when the Products, in fact, contained a preservative.  (*See, e.g.,* FAC ¶¶ 11–13.)

Second, Defendant cites to *Housey v. Procter & Gamble Co.*, No. 21-CV-2286, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd sub nom. Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022), where the court relied on scientific publications cited in a complaint to dismiss the complaint and urges this Court to take the same path.  *Id.* at *6.  (Def's Mem. at 20.)  However, *Housey* is distinguishable because, as Defendant admits, the

The Court finds that Defendant's second argument also fails. To survive a motion to dismiss, a plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 160 (quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, [a] plaintiff[] must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions"). "While it is possible for a court to decide this inquiry as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases). "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y.

---

publications Plaintiffs cite in the FAC establish that "citric acid *in general* can preserve . . . food." (Def's Mem. at 18 (emphasis in original).) Thus, Plaintiffs' allegations concerning the preservative effect of citric acid in the Products are consistent with—*and not undermined by*—the conclusions of these publications. (*See* FAC ¶¶ 21–31.) As a result, the Court must rely on Plaintiffs' allegations instead of the underlying publications. *Cf. Housey*, 2022 WL 874731, at *6 (explaining that where "a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true.").

13

Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

Here, Plaintiffs allege that citric acid is a preservative in the Products, (*see* FAC ¶ 25), and that "Defendant[] label[s] and advertis[es] . . . the Products as containing 'No Preservatives,'" (*id.* ¶ 4). These allegations are plainly sufficient to state a claim for material misrepresentation under the GBL. *See Quiroz*, 2019 WL 1473088, at 8 (finding plaintiff had alleged a material representation because "the label 'No Preservatives' on the [p]roduct is misleading if it contains preservatives"); *cf. Ashour v. Ariz. Beverages USA LLC*, No. 19-CV-7081, 2020 WL 5603382, at *5 (S.D.N.Y. Sept. 18, 2020) (finding plaintiff had met his heightened burden under Fed. R. Civ. P. 9(b) to plead with specificity a fraudulent statement where complaint alleged that product represented that it had 'No Preservatives' but contained citric acid).[5]

### c. Injury

Defendant argues that Plaintiffs fail to allege that any "price premium" they paid caused an injury. (*See* Def's Mem. at 25–27.) "An actual injury claim under [§§] 349 and 350 typically

---

[5] Defendant raises two other arguments that the Court finds unconvincing, particularly given that the Court must draw all inferences in Plaintiffs' favor. *See Div. 1181*, 9 F.4th at 95.
  Defendant asserts that "Plaintiffs provide no allegations that reasonable consumers would think that citric acid functions as a preservative in a frozen food product or that reasonable consumers would believe that citric acid is even a preservative." (Def's Mem. at 23.) However, this assertion supports Plaintiffs' argument that labelling the Products as containing "No Preservatives" is materially misleading, given that if consumers are unable to determine citric acid's function in the Products or in general, then they would be more likely to rely on Defendant's representation that the Products contain "No Preservatives" to reach a purchasing decision and, for those who made a purchase, to be misled.
  Defendant also argues that Plaintiffs' "absolutist interpretation of "[N]o [P]reservatives" does not meet the reasonable consumer standard" because it requires assuming that even trace amounts of citric acid in a product would mean that that product contains preservatives. (*Id.*) Yet, it seems self-evident that an absolutist interpretation is entirely reasonable where Defendant's packaging states that the Products contain "*No* Preservatives."

requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (alterations and quotation marks omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 278 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)). "A plaintiff can show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" *Id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (quotation marks omitted)). However, "[t]o allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* (quotation marks and citation omitted); *see also Sabatano v. Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." (citation omitted)); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))). Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product "did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (collecting cases).

      Here, Plaintiffs allege that when purchasing the Products, they each "relied upon the claims made on the front label of the Products, including the "No Preservatives" claim." (FAC

15

¶¶ 11–13.) Plaintiffs also allege that "[i]f [they] had known that the Product[s] contained preservatives, then [they] would not have purchased the Product[s] or would have paid significantly less for the Product[s]." (*Id.* ¶ 11.) At this early stage of the case, these allegations suffice to allege a price premium theory of injury. *See Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *10–11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory (citation and quotation marks omitted)); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the [product], or would have paid less for it" (footnote and quotation marks omitted)).

  2. Preemption

    Defendant argues that Plaintiffs' GBL claims are preempted because "Plaintiffs[] . . . attempt to . . . use a purported violation of federal labeling laws as a basis for supporting Plaintiffs' claims under" the GBL. (*See* Def's Mem. 27–31.) The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty.*

16

*v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985). "State action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (citations omitted); *accord Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). The party arguing that federal law preempts a state law bears the burden of establishing preemption. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013).

State law is expressly preempted under the Supremacy Clause when "Congress . . . define[s] explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (the "FDCA"), as amended by the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990) (the "NLEA"), "forecloses a 'State or political subdivision of a State' from establishing requirements that are of the [same] type but 'not identical to' the requirements in some of the misbranding provisions of the FDCA." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) (quoting 21 U.S.C. § 343-1(a)). Enforcement of the FDCA is largely committed to the FDA. *Id.* at 115; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (explaining that the FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance"). The FDCA governs the labeling of preservatives, and expressly preempts state law in this respect. *See* 21 U.S.C. § 343-1(a)(3) ("[N]o State . . . may directly or indirectly establish . . . any requirement for the labeling of food of the type required by [the FDCA] that is not identical to" the FDCA's requirements). When a product contains a preservative, FDA regulations dictate that the product

17

must "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function." 21 C.F.R. § 101.22(j).

Defendant argues that Plaintiffs' claims are preempted because they seek to impermissibly impose a requirement that citric acid always be noted as a preservative where present in a product, a more stringent standard than the FDA imposes in its regulations. (Def's Mem. at 29.) Defendant's argument fails because it is based on a faulty construction of Plaintiffs' claims. Plaintiffs do not argue that Defendant must include additional labelling, rather, Plaintiffs claim that Defendant's *existing* labelling is misleading, and that Defendant is liable for that misrepresentation. (*See* FAC ¶¶ 75–102.)[6] Thus, Plaintiffs' claims are not preempted by the FDCA because they do not address the sufficiency of Defendant's labelling under the FDCA but rather its truthfulness. *See Ashour*, 2020 WL 5603382, at *3 ("Plaintiff's state law claim that [the d]efendants deceptively labeled their beverages as containing "No Preservatives" does not conflict with the federal [labelling] requirement, which only mandates identifying the preservative.") (citation omitted); *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018) (finding plaintiff's claims were not preempted by federal law because "plaintiffs . . . [did] not seek to impose new standards or requirements in connection with their consumer protection claims. They simply want to ensure that [the defendant's] labels are truthful."); *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) (finding plaintiff's claim challenging truthfulness of "All Natural" label was not preempted because granting plaintiff's request to prohibit defendant

---

[6] Because Plaintiffs have represented that they will be withdrawing their request for injunctive relief, the Court does not analyze whether this claim would be preempted by the FDCA.

18

from using the label would have "no effect on [the d]efendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements").

Defendant also argues that Plaintiffs are preempted from bringing their claim because they "try to use a . . . violation of the [FDCA] to support their . . . claims," but only the FDA may bring an action to enforce the FDCA. (Def's Mem. at 29.) The Court also finds this argument unavailing. While Plaintiffs do point to FDA regulations and a warning letter in support of their argument that citric acid functions as a preservative in the Products (*see* FAC ¶¶ 21–24), Plaintiffs do not argue that Defendant are liable for failing to comply with the FDCA, rather they assert that Defendant's labelling of the Products is deceptive, (FAC ¶¶ 75–102). The FDCA does not preempt "state law claim[s] . . . [where they] incorporate, but [do] not depend entirely upon, an FDCA violation and [are] premised on conduct that would give rise to liability under traditional common law principles." *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010). Thus, because Plaintiffs' claims sound in fraud and do not rely entirely on an FDCA violation, they are not preempted by the FDCA. *See Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 113 (E.D.N.Y. 2021) (finding plaintiffs' claims were not preempted where "plaintiffs' allegations can be read as resting on broader grounds than as alleging a violation of the FDA's guidance alone"); *Dayan v. Swiss-Am. Prod., Inc.*, No. 15-CV-6895, 2017 WL 1214485, at *4 (E.D.N.Y. Mar. 31, 2017) (holding claim was not preempted where plaintiff's allegations were "not entirely dependent on the FDCA because they would exist as traditional common law tort claims even if the FDCA had never been enacted"); *In re Bayer*, 701 F. Supp. 2d at 375 ("Although plaintiffs reference FDCA regulations and the 2008 warning letters, they do so for context and background information. . . .

[Their claim] sounds in traditional principles of state law and would give rise to recovery even had the FDCA never been enacted.").

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is denied.  The Court will hold a conference on May 2, 2023 at 11:00 AM.  Plaintiffs are directed to amend the FAC to withdraw their claim for injunctive relief within 30 days of the date this Opinion is issued.  The Clerk of Court is directed to terminate the pending motion.  (*See* Dkt. No. 25.)

SO ORDERED.

Dated:   March 28, 2023
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　KENNETH M. KARAS
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge